Consolidated Cigar Corporation, recurrente, *v.* El Registrador de la Propiedad de Guayama, recurrido.

*Número*: 1368.  *Resuelto*: 27 de octubre de 1961.

*Córdova & González* y *Carlos Cebollero,* abogados del recurrente; el Registrador recurrido compareció por escrito.

Sala integrada por el Juez Presidente señor Negrón Fernández, como Presidente de Sala, y los Jueces Asociados señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El Registrador se negó a inscribir. Mantiene que lo escriturado constituye una donación y no se acreditó el pago de la contribución correspondiente. De la escritura presentada surge que en septiembre de 1956 la corporación doméstica Pedro Ferrer León, Inc. adeudaba a la Consolidated Cigar Corporation la suma principal de $127,770.81, intereses acumulados hasta el día dos de abril del mencionado año que ascendían a $15,957.78 ([1]) y otra cantidad por intereses devengados desde esta última fecha. Para garantizar la totalidad de la cantidad adeudada por principal e intereses la deudora le había entregado dos pagarés ascendentes a $100,000.00 garantizados con hipoteca sobre una finca de seis cuerdas sita en el Barrio Cañabón de Cayey, otros dos pagarés por $50,000.00 sobre el inmueble objeto del contrato cuya inscripción se denegó; además su principal accionista le había entregado en prenda la mayoría de sus acciones.

Las partes llegaron a un acuerdo que formalizaron en escritura pública bajo los términos y condiciones siguientes: La Consolidated renunciaba al cobro de los intereses atrasados que se refieren arriba, quedando la deuda reducida a $127,770.81; la corporación deudora le traspasaría un inmueble valorado en $115,000.00 consistente en un predio de terreno donde estaban ubicados cuatro edificios con maqui-

---

([1]) A pesar de que en la escritura expresamente se hace constar que la suma de $15,957.78 correspondían a un año de intereses, si el principal adeudado asciende a $127,770.81 tiene que haber un error en cuanto al período a que corresponden, pues de lo contrario los intereses serían usurarios.

naria para la elaboración de tabaco, de los cuales se acreditarían $100,000 a la deuda antes mencionada y se retendrían $15,000 en poder de la acreedora para satisfacer los gastos envueltos en la operación y las contribuciones adeudadas sobre el inmueble por tres años y el corriente. Por el balance de $27,770.81 la deudora entregaría un pagaré garantizado mediante los dos pagarés hipotecarios que gravaban la finca de seis cuerdas sita en el barrio Cañabón; la Consolidated a su vez le daría una opción por cinco años para readquirir el inmueble por $100,000.00 más lo que hubiere pagado por contribuciones más la mitad de los gastos en que se incurriera en la transacción original, e intereses al 4½% hasta la retroventa. Pedro Ferrer León, Inc. se comprometía a su vez que de readquirir el inmueble, e interesar venderlo más tarde, la Consolidated tendría una primera opción para readquirirlo por $115,000.00. Estipularon las partes además, que durante el término de la opción la corporación deudora podría continuar utilizando tres de los cuatro edificios localizados en los terrenos adquiridos.

Presentada la escritura para su inscripción la nota denegatoria expresa:

"Denegada la inscripción de este documento con vista de otros al folio 188 del tomo 114 de Cayey, finca núm. 4130, Anot. A., por observarse que de dicho documento (apartado (a) del hecho tercero) aparece que al practicarse la liquidación de la deuda existente entre la vendedora Pedro Ferrer León Inc. con la compradora Consolidated Cigar Corporation, cuya deuda motiva el acto escriturado, dicha compradora condona a dicha vendedora parte de la deuda en la cantidad de $15,957.78 por concepto de intereses del año que terminó el 2 de abril de 1956 y además los intereses devengados, cuya cuantía se omite, desde dicha fecha hasta la fecha del otorgamiento de esta escritura, constituyendo tal condonación una donación de carácter intervivos, de acuerdo con el artículo primero de la Ley núm. 303 de 12 de abril de 1946, según fue enmendado por la Ley núm. 4 de 16 de febrero de 1955 sin que se haya acreditado, no obstante

los requerimientos al efecto, la liquidación y pago de la contribución correspondiente a dicha donación o la exención en su caso de acuerdo con el art. 12 de la citada ley; . . ."

Así, la única cuestión a resolver en este recurso es si constituye una donación, sujeta al pago de la contribución correspondiente, la condonación de los intereses adeudados.

■ La donación se define en el Código Civil, artículo 558 (31 L.P.R.A. sec. 1981), como que "es un acto de liberalidad por el cual una persona dispone gratuitamente de una cosa en favor de otra que la acepta".

■ Al considerar el concepto de "cosa" a que se alude en el precitado artículo, Puig Peña sostiene en su Tratado de Derecho Español, tomo 4to. vol. 2do. a la pág. 166 que " . . . no son sólo donaciones las *reales* (que actúan el enriquecimiento transfiriendo la propiedad de una cosa) ; sino las *obligaciones* (que lo actúan creando un crédito), y las *liberatorias* (que lo realizan *extinguiendo* una obligación)". (Énfasis del autor.) La propia Ley Núm. 303 del 1946 (13 L.P.R.A. sec. 881) expresamente establece en su artículo 1ro. que "donación también incluye la condonación total o parcial de una deuda u otra obligación", pero dispone además que "[n]o se considerarán donaciones, (1) . . . . . (2) la cancelación de deudas incobrables; . . . " . Es claro pues, que la aplicación de esta ley no se circunscribe a la donación estricta que regula el Código Civil. *Blanco* v. *Registrador*, 70 D.P.R. 17 (1949).

■■ Constituye pues, donación, sujeta al pago de la contribución correspondiente el liberar a una persona de una obligación, no sólo por disponerlo así expresamente la Ley Núm. 303 de 1946, sino por estar comprendida dentro del concepto de donación de nuestro Código Civil. Ahora, ¿cuáles requisitos deben concurrir para que la remisión parcial de una deuda constituya una donación? El requisito principal y básico de la donación es la liberalidad. En sentencia del Tribunal Supremo de España de 5 de mayo de 1896 (Juris-

prudencia Civil, vol. 79, pág. 873) citada en 11 Scaevola, Código Civil, vol. 2, pág. 537 (1943) se dice:

"Considerando que, según el art. 618 del Código civil, es la donación un acto de liberalidad por el cual una persona dispone gratuitamente de una cosa propia en favor de otra que la acepta, de suerte *que si el acto no es gratuito, en beneficio del donatario,* si el interés de las partes y NO LA LIBERALIDAD de una de ellas lo determina, carece de uno de los requisitos necesarios para que pueda tenérsele y reputársele como donación: . . ." (Enfasis del autor.)

Cuando en la jurisdicción federal, en donde se considera tributable la condonación de una deuda bajo las disposiciones del "gift tax" (5 Mertens, *Law of Federal Gift and Estate Taxation* § 34.01, pág. 19 (1959)) se enfrentan al problema de determinar cuándo constituye donación sujeta a contribución la cancelación de una deuda, se le da gran importancia a dos factores. Para que se considere donación sujeta a la contribución deben mediar dos circunstancias: (a) intención de beneficiar al deudor y (b) ausencia de causa. 5 Mertens, *op. cit.* sec. 34.01; Paul, *Federal Estate and Gift Taxation* sec. 16.07 (1942); Harris, *Handling Federal Estate Taxes* sec. 417, pág. 568 (1959). Se considera que la cancelación de una deuda como parte de una transacción comercial *bona fide* no constituye una donación sujeta a la contribución de la ley federal. Lowndes and Kramer, *Federal Estate and Gift Taxes*, págs. 651–652 (1956) y se sostiene que no hay donación si se cancela parte de una deuda para recobrar algo del total adeudado. Warren and Sugarman, *Cancellation of Indebtedness*, 40 Colum. L. Rev. 1326 (1940). Véase *Commissioner* v. *Wemyss*, 324 U.S. 303 (1945).

Lowndes y Kramer, *op. cit.*, exponen a la pág. 651:

"Cuando un acreedor como parte de una transacción comercial, discutida entre ellos, condona una deuda, nos parece claro que su intención no es hacer una donación de parte alguna de la deuda por la cual no recibe causa, sino que lo que en verdad hace es trocar la deuda bajo aquellos términos y condiciones que

él considera los más favorables bajo las circunstancias. Si una persona condona una deuda con la intención de hacerle una donación al deudor, no hay razón alguna para que ello no se considere como una donación tributable al igual que una donación de cualquier otro tipo de propiedad . . . .

"Transigir una reclamación presenta casi la misma situación que condonar una deuda. Si una persona acepta menos de la cantidad reclamada con la intención de hacer una donación a la otra parte, ello constituye una donación. Sin embargo, si la transacción se lleva a cabo en un nivel comercial en que ambas partes han tenido la oportunidad de discutir ampliamente el asunto, sin intención de donar, en ese caso no hay una donación tributable no importa lo adecuado o no de la cosa recibida en cambio."

Analicemos la operación escriturada a la luz de lo que queda expuesto. En primer lugar no debe perderse de vista que las relaciones existentes entre las dos corporaciones eran estrictamente comerciales. Lo pactado no fue con la intención de beneficiar a la firma deudora. Medió causa onerosa pues se estipularon prestaciones recíprocas (Sentencias del 2 de octubre de 1918 (84 Jurisprudencia Civil 630) y 28 de junio de 1898 (144 Jurisprudencia Civil 339) Scævola *op. cit.* pág. 536). Recuérdese que Pedro Ferrer León, Inc. adeudaba una suma considerable de dinero a la Consolidated Cigar; que para garantizar esta deuda Pedro Ferrer León, accionista de la corporación deudora, había entregado la mayoría de las acciones de esa corporación; que, además, había hecho entrega de sendos pagarés hipotecarios garantizados con dos inmuebles pertenecientes a la corporación deudora; que Pedro Ferrer León, Inc. estaba atrasado en el pago de las contribuciones sobre la propiedad por un período de tres años y el corriente, y que adeudaba intereses sobre el principal correspondientes por lo menos a los dos últimos años. Ante esta situación, la Consolidated optó por no exigirle el pago de los intereses, que dado el cuadro económico existente obviamente no podía pagar la deudora, a cambio de que le traspasara por un precio preconvenido un inmueble dedicado

a la elaboración de tabaco. Si la Consolidated hubiera ejecutado para hacer efectivo su crédito hubiera tenido que cargar con todos los gastos que un pleito origina. Sin embargo obtuvo el inmueble, sustituyendo la garantía de unos pagarés garantizados por unos inmuebles que adeudaban contribuciones por tres años y el corriente, y dedujo de su precio por convenio expreso una cantidad suficiente para pagar estas contribuciones, honorarios de abogado así como los del perito que evaluó el inmueble. Si la corporación deudora decidía hacer uso del derecho a retraer la finca, tenía que pagar lo que la Consolidated pagó por contribuciones, gastos legales, etc. Surge claro pues de esta situación, que la Consolidated al remitir los intereses no lo hizo con la intención de beneficiar a Pedro Ferrer León, Inc., sino a cambio de obtener por lo que se le debía, un inmueble dedicado al mismo negocio a que se dedicaba la recurrente y que obviamente era mucho mejor garantía tenerlo a su nombre aunque Pedro Ferrer León, Inc. lo pudiera retraer por el mismo precio pagado por la Consolidated, más los intereses previamente convenidos. La Consolidated al remitir los intereses vencidos no lo hizo para beneficiar a la deudora. Dada la situación económica de ésta eran prácticamente incobrables. Ya vimos que la propia ley que invocó el Registrador dispone que la cancelación de deudas incobrables no constituye donación sujeta a la contribución. Además, como ya hemos visto aquí medió causa onerosa. La acreedora obtuvo una mejor garantía. En realidad lo que hubo fue una transacción. 8 Manresa, Comentarios al Código Civil Español, pág. 674 (1950). A cambio de una mejor garantía para la suma principal adeudada fue que la Consolidated remitió los intereses. Y la corporación deudora se obligó además a que en caso de que hiciera uso de su derecho a retraer el inmueble dentro del período pactado para ello, si luego durante los cinco años siguientes decidía venderlo estaba obligada a darle

preferencia a la Consolidated y a venderlo por el precio que se evaluó en el año 1956. Con estos hechos no vemos cómo puede sostenerse que de la faz de la escritura surge que se hizo un traspaso de bienes por menos de su justo valor. Cf. *Blanco* v. *Registrador*, supra.

*Se revocará la nota recurrida, y se ordenará la inscripción solicitada.*