GEOFFREY C. DAVIES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 642–62. Filed June 14, 1963.

*Milton Cades* and *J. Russell Cades*, for the petitioner.
*Sidney U. Hiken*, for the respondent.

530

OPINION

OPPER, *Judge:* There is no dispute as to the making of a gift to petitioner by his father, nor as to the valuation of any gift that was made. The parties are in disagreement only as to what it was that constituted the subject matter of the gift, and, incidentally, perhaps as to the year of its occurrence. Ordinarily it would be of no consequence that a gift was in cash rather than property where the value is concededly the same. The issue arises here because the donor was a nonresident alien and if cash gifts were made in the country of his domicile they would not be subject to U.S. gift tax, whereas the real property involved was situated in U.S. territory and any gift of that character carries with it a liability for Federal gift tax. "The [gift] tax * * * in the case of a nonresident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States." Sec. 1000 (b), I.R.C. 1939.

It seems to us clear that an interest in Craigside, the family estate situated in Honolulu, was given to petitioner. He received the down-payment from the donor before any "sale" on the express condition that it be used for that purpose. It makes little difference whether we say that Craigside, a property with an agreed value of about $88,000, was turned over to petitioner upon his undertaking to pay some $74,000 for it and hence that the transfer was for less than full and adequate consideration;[1] or that a gift of an equity in Craigside of a value of approximately $15,000 was completed by the delivery to

---

[1] SEC. 1002 [I.R.C. 1939]. TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION.

Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

petitioner of a deed in exchange solely for his purchase money mortgage of $74,000 or so. See *Estate of Koert Bartman*, 10 T.C. 1073, 1079 (1948); *Gertrude H. Blackburn*, 20 T.C. 204 (1953). On any approach, we think there can be no question that a gift of an interest in real property in the United States was made to petitioner in 1950 by his father on the facts affirmatively appearing from the record.

Respondent would have us go further and characterize, as the gift of an interest in the same property, the cash which the donor subsequently made available to petitioner and with which he paid off the purchase money mortgage. But we cannot go so far. The transfers to petitioner's credit were made in pounds sterling in Britain. They were not conditioned, as was the downpayment, upon their use in any specified manner. Nor were they agreed to as part of the original transaction by either petitioner or the donor in the way that the original downpayment was treated. They did not fulfill any prearranged plan or commitment, see *Nathan R. Allen*, 38 B.T.A. 160 (1938); Rev. Rul. 58–261, 1958–1 C.B. 143, as respondent apparently concedes.[2] "The fact that * * * [the seller] may have given * * * [the purchasers] money with which the * * * [payments] were made does not defeat the sales so long as the gifts were free and unencumbered and the money belonged to * * * [the purchasers] to do with as they pleased." *Cap Andrew Tilles*, 38 B.T.A. 545, 547 (1938), affd. 113 F. 2d 907 (C.A. 8, 1940), certiorari denied 311 U.S. 703.

We conclude that these subsequent transfers were no more than cash gifts of English funds which took place in Britain. That the donor may have hoped and, indeed, expected that they would be used to clear the encumbrance on the property does not succeed in elevating the transaction to the dignity of a transfer of the real property itself any more than would be the case if the mortgage had been held by a third person.

Respondent's reference to the series of transfers in pounds sterling as the attribute which is relied on by petitioner to prevent the transaction from being a gift is wide of the mark. What removed it from the category of gifts, except to the extent of the downpayment, was petitioner's valid, enforceable, and subsisting agreement to pay for the property and the effectuation of that agreement by the execution and recording of the purchase money mortgage.

The fact that * * * [the donor] indicated he would probably not collect on the note and would cancel portions of it from time to time if business conditions continued to be good, and the fact that the officers and incorporators of * * *

---

[2] Respondent says in his brief: "[P]etitioner * * * apparently seeks to substitute * * * arguments such as that 'the father was under no commitment, legal or moral, to make * * * deposits to petitioner's account.' Of course that is true, but it is only true to the same extent, and with the same irrelevancy, as is the fact that the father was under no commitment to make the gift of Craigside which he did make * * *."

[the donee] did not think they would be called upon to pay the note, do not support a conclusion that * * * [the donor] intended to make a completed gift * * *.

* * * The * * * [note], on * * * [its face], evidenced a binding obligation to pay a sum certain, and there is no evidence to conclude that * * * [it was] without consideration, invalid, unreal, or otherwise than what * * * [it] purported to be * * *. The mere fact that the original payee indicated he might or might not attempt to collect on the * * * [note], or that he might forgive all or portions of * * * [it] in the future, makes the * * * [note] no less * * * [a] binding * * * [obligation] until the events occurred which would relieve the obligation.

*Nelson Story III*, 38 T.C. 936, 941–942 (1962).

We intimate no opinion as to what would have been the effect of a gratuitous subsequent forgiveness of this mortgage and the accompanying obligation to pay. That is not what occurred. Whether there would otherwise have ensued a gift of real property in the United States as opposed to British funds in England, we need hence not consider on this record. Cf. *Nelson Story III, supra.*

The lack of any prior plan or arrangement serves to distinguish this case from *Minnie E. Deal*, 29 T.C. 730, 737 (1958), *Marie-Anne De Goldschmidt-Rothschild*, 9 T.C. 325 (1947), affd. 168 F. 2d 975 (C.A. 2, 1948), and *John E. Andrus, Jr.*, 15 B.T.A. 479, 482 (1929), revd. 50 F. 2d 332 (C.A.D.C. 1931).

Except to the extent of the value of the downpayment or equity in Craigside transferred in 1950, we accordingly regard respondent's determinations as erroneous.

*Decision will be entered under Rule 50.*