JULIO CÉSAR NIETO, Appellant, *v.* THE REGISTRAR OF PROPERTY OF SAN GERMÁN, Respondent.

No. G-64-5.     Decided January 25, 1965.

*Luis López de Victoria* for appellant. The Registrar appeared by brief.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Section 1 of Act No. 303 of April 12, 1946, 13 L.P.R.A. § 881, provides, *inter alia*, that "When a property is transferred for less than its fair value, either in money or money's worth, or by exchange, the excess of the fair value of said property over the consideration in money or money's worth, or thing for which said property was exchanged, shall be considered a gift, and shall be included in computing the total gifts made during the year." The application of this provision has given rise to this administrative appeal.

The deed presented to be recorded—number 18, executed on February 3, 1964 before Notary Luis López de Victoria —and the entries in the registry show the following antecedents: that on April 9, 1963 José Antonio Colón and his wife Gloria purchased a certain property for the price of $4,000—a 249.23 square-meter lot with a zinc-roofed frame structure—located on Pedro Vargas Rodríguez Street in Guánica; that scarcely ten months later the Colons sold said property for the amount of $3,500 to Julio César Nieto and his wife Doris Vargas, who, being residents of New York city, were represented at the execution of the deed of sale by an agent with verbal authority. The note of refusal states that the $500 difference could constitute a gift and that inasmuch as the payment or the exemption of the corresponding tax has not been established, record is denied and a cautionary notice is entered.

In *Cupeles* v. *Registrar,* 87 P.R.R. 734 (1963), we expressly did not pass on the question of whether the sale of real property for less than the value for which it was acquired constitutes a taxable gift. It involved the sale of

a rural farm for the price of $6,000 which had been purchased seven years before for the amount of $8,500. Since it appeared from the deed that some crops which were included in the original transaction were not mentioned in the latter, we considered that the facts did not justify our passing on the ground adduced by the registrar to deny record, which was identical with the one mentioned in the note appealed from. The situation now under consideration is different.

■ In *Freeman* v. *Noguera, Sec. of the Treas.*, 82 P.R.R. 298, 301–304 (1961), we gave the history of the legislation passed since 1901 concerning the assessment of the so-called inheritance tax. Since then, and until the enactment of Act No. 303 of April 12, 1946, *supra*, the only taxable event was death. Although donations were mentioned, see § 1 of Act No. 99 of August 29, 1925 (Sess. Laws, p. 790) and § 368 of the Political Code of 1902 (Revised Statutes 1902, p. 455), this reference was limited to those which contemplated the granting of possession, the nude ownership, or usufruct, after the death of the grantor, and only covered donations inter vivos when it was intended to distribute the property in life.[1] Except in this case and in those subject to collation, § 989 in reference to 990 of the Civil Code, 1930 ed., 31 L.P.R.A. §§ 2841 and 2842,[2] the donation inter vivos was not subject to the payment of such tax.

■ Act No. 303 substantially altered the system enlarging the ambit of assessment in such a manner that it practically covers every kind of transfer, whether inter vivos

---

[1] Section 13 of Act No. 99 of August 29, 1925 (Sess. Laws, p. 790) provided that: "Any donation made with the object on the part of the donor of distributing in life, or after his death, the full ownership, nude ownership or usufruct among his heirs, with the purpose of avoiding a distributable inheritance, thus evading the payment of the inheritance tax, shall be considered as *mortis causa* for the purposes of this Act, and shall be subject to the payment of the tax herein provided."

[2] Identical to §§ 1001 and 1002 of the Civil Code of 1902.

or mortis causa, and among them the modality we shall call transfer for less than its fair value. This provision is a literal translation of § 2512 (b) of the Federal Code in force, 26 U.S.C. § 2512 (b),[3] which copied literally in its English version reads as follows: "Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amounts of gifts made during the calendar year." The only addition to the local provision is the inclusion of an express reference to the value of property received in exchange. This precept, which in the federal law appears in the sections on valuation was incorporated in Puerto Rico as part of the definitions of taxable event "gift." In *Commissioner* v. *Wemyss*, 324 U.S. 303, 306 (1945), it was stated that "had Congress taxed 'gifts' *simpliciter*, it would be appropriate to assume that the term was used in its colloquial sense, and a search for 'donative intent' would be indicated. But Congress intended to use the term 'gifts' in its broadest and most comprehensive sense. (Citations.)" Hence, as it immediately follows in the above citation, it is not necessary to resort to but rather dispense with notions of common law considerations for the purposes of the gift tax. We have attributed the same intention to our legislator and, as a result, it is not indispensable to resort to civil law to formulate the concept of gift. *Consolidated Cigar Corp.* v. *Registrar*, 83 P.R.R. 723, 726 (1961).

■■ Now, concerning transfers for less than their fair value it does not mean that respective considerations have

---

[3] This provision has kept the same text since originally incorporated as § 503 of the Federal Internal Revenue Code by the Act of June 6, 1932, 47 Stat. 248, which afterwards became § 1002 of the Internal Revenue Act of 1939. A similar provision existed since 1924 (§ 320 of the Act of 1924, 24 U.S.C.A. 81, Int. Rev. Acts, 1940 ed.).

to be evenly balanced, even when a literal construction of the statute might lead to that result. It was so held initially by the Tax Court of the United States, *William H. Gross*, 7 T.C. 837, 846–847 (1946); *Herbert Jones*, 1 T.C. 1207 (1943). A similar view was taken by the Commissioner of Internal Revenue upon promulgating regulations, 26 C.F.R. § 25.2512–8 (1954), and its forerunners, all drafted in similar terms. Mertens[4] comments that "a long history of administrative construction holds, in effect, that no examination need be made as to the fullness and adequacy of the consideration where the transfer is made in connection with a transaction in the ordinary course of business. The basis for such exclusion is a presumption that such a transaction involves adequate and full consideration in money or money's worth." All that is required is that the transaction be legitimate, the outcome of ordinary business transactions and free from any donative intent. The same view is held by Lowndes and Kramer, Federal Estate and Gift Taxes 310–313 (Prentice Hall, 1956), and Beveridge, Law of Federal Gift Taxation 46–49, § 3.03 (Callaghan and Company, 1958). The Federal Code defines the standard with the graphic phrase: "a transaction which is bona fide, at arm's length, and free from any donative intent." This, of course, excludes transactions in which the consideration of one of the obligations or promises is merely nominal or unsubstantial, *Minnie E. Deal*, 29 T.C. 730 (1958), or in which the donative intent is predominant, *cf. Descartes*, *Treas.* v. *Tax Court*, 70 P.R.R. 537 (1949).

Mertens, *op. cit.* at 98, § 34.19, points out that the inquiry should be confined to determining whether the transaction is a genuine business transaction, even though this is not directly related to the business of the taxpayer. It seems perti-

---

[4] Law of Federal Gift and Estate Taxation 96, § 34.18 (Lofit Publications, 1959).
Id.

nent to cite here from the Tax Court in *Estate of Monroe D. Anderson*, 8 T.C. 706, 720 (1947) : "Bad bargains, sales for less than market, sales for less than adequate consideration in money or money's worth are made every day in the business world, for one reason or another; but no one would think for a moment that any gift is involved, even in the broadest possible sense of the term 'gift'." The presumption that a transaction of this nature has sufficient and adequate consideration has been held in cases in which the correlative promise hardly amounts to half of the value of the property transferred, *Eva B. Hull*, 62,199 P-H T.C. Memo; *Carl E. Weller*, 38 T.C. 790 (1962) ; *cf. Rosenthal* v. *Commissioner*, 205 F.2d 505 (2d Cir. 1953) ; *Barbara S. Fulton*, 49,110 P-H T.C. Memo. Concerning payments made as a premium for services already rendered, see *Flax* v. *Treasurer*, 76 P.R.R. 365 (1954).

Even though we would not specifically characterize it as such, a similar norm on the absence of a taxable donation when a genuine business transaction is involved was applied in *Consolidated Cigar* v. *Registrar*, 83 P.R.R. 723 (1961), where the note of refusal rested in that the instrument presented for registry involved the partial remission of a debt. In the above case we cite from Lowndes and Kramer, *supra* at p. 728 the following: "If a person accepts less than the amount of his claim with the intention of making a gift to the person against whom he has the claim, this is a gift. If, however, the compromise is worked out on a business basis as part of an arm's length transaction without any donative intent, then it is not a taxable gift regardless of the adequacy of the consideration for the compromise."

■■ In the case at bar the bare fact that the sale was for five hundred dollars less than the purchase price[5] does

---

[5] It is doubtful that in a case involving a difference of only five hundred dollars the purchaser be required to present as a complementary instrument the gift tax receipt or tax exemption, since the filing of a return

not justify, in itself, that it be considered as a donation and not as a genuine business transaction, and that the presumption we have been referring be ignored.[6] We shall give the provision invoked in relation to transfers for less than their fair value the same scope as its precedent has in the federal tax jurisdiction.

The note appealed from will be reversed and the registration shall be ordered.

---

is only required when in gifts inter vivos the donor makes a gift in excess of one thousand dollars, or the donee receives gifts aggregating the amount of one thousand dollars or more during any calendar year. Section 7 of Act No. 303 of April 12, 1946, 13 L.P.R.A. § 888.

On the other hand, the amendment introduced to § 12 of Act No. 99 of August 29, 1925 by Act No. 189 of May 13, 1948 (Sess. Laws, p. 526)— to set aside our decision in *Estévez* v. *Registrar*, 67 P.R.R. 337, 342 (1947), ratified in *Casalduc* v. *Registrar*, 67 P.R.R. 582 (1947)—refers only to the presentation of the receipt issued by the Secretary of the Treasury establishing the *payment* of the inter vivos gift tax. As to the tax imposed by reason of the death of the donor, the Act mentions "special receipt or receipts"; the receipt undoubtedly refers to the payment of tax, and special receipts include the letter of exemption.

[6] This presumption is subject to what the law establishes in transfers made by a person over 50 years of age to his children, descendants, relatives, or any other person who could be "natural objects of his bounty." Section 10(c) of Act No. 303 of April 12, 1946, 13 L.P.R.A. § 891(c).

It should be noticed that concerning transfers between relatives, § 10(a), 13 L.P.R.A. § 891(a), requires that: "every person who transfers any share, right, interest or other valuable intangible, transmissible by endorsement or by delivery, to any child, descendant, relative or other natural object of his bounty, shall within ten days thereof . . . record such transfer before a notary public, stating in full the consideration, if any, given in exchange and the date of transfer . . ." and that § 7(c), 13 L.P.R.A. § 888(c), requires corporations to file returns of transfers of shares.