ESTATE OF J. W. KELLEY, DECEASED, N. RAY KELLEY, INDEPENDENT EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MARGARET I. KELLEY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3236-73, 3237-73.     Filed December 12, 1974.

*Edward R. Smith,* for the petitioners.
*John W. Dierker,* for the respondent.

### OPINION

FEATHERSTON, *Judge:* In these consolidated proceedings, respondent determined the following deficiencies in the gift tax of petitioners:

| Docket No. | Year | Deficiency |
|---|---|---|
| 3236-73 | 1954 | $8,869.65 |
| 3237-73 | 1954 | 11,441.62 |

Respondent also determined that additions to the tax were applicable under section 6651(a)[1] in the amount of $2,876.51 in each case. Three issues must be resolved:

1. Were transfers in 1954 of remainder interests in land by petitioners to their children and grandchildren in exchange for vendor's lien notes completed gifts within the meaning of section 1000 of the Internal Revenue Code of 1939?

2. Was the subsequent forgiveness of the vendor's lien notes by petitioners gifts of present or future interests within the meaning of section 1003(b)(3) of the Internal Revenue Code of 1939?

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise noted.

3. Are petitioners liable for the additions to tax determined to be due under section 6651(a) for failure to file timely gift tax returns for 1954? '

All the facts are stipulated.

Petitioners N. Ray Kelley, independent executor of the Estate of J. W. Kelley, and Margaret I. Kelley were legal residents of Earth, Tex., at the time the petitions herein were filed.

On August 5, 1954, J. W. Kelley, since deceased, and his wife, Margaret I. Kelley (hereinafter referred to as petitioners), executed five warranty deeds transferring to their three children, N. Ray Kelley, M. E. Kelley, and Beulah Danforth, and to their two grandchildren, Jerry E. Devenport and Sybil Devenport Angeley, specific tracts of land in Lamb, Castro, and Palmer Counties, Tex., subject to stated reservations. In each conveyance, petitioners reserved to themselves the full possession, benefits, and use of the properties, as well as the rents, issues, and profits thereof during both of their natural lives.

Each of the deeds recites that it was given in consideration of a stated cash payment and vendor's lien notes. Each grantee executed four non-interest-bearing vendor's lien notes in favor of petitioners, the first of which matured January 1, 1955. The second note matured January 1, 1956; the third one on January 1, 1957; and the last one on January 1, 1958. The face amount of each vendor's lien note executed by N. Ray Kelley, M. E. Kelley, and Beulah Danforth was $6,000; the face amount of each vendor's lien note executed by Jerry E. Devenport and Sybil Devenport Angeley was $3,000. The downpayments made by the grantees in connection with the conveyances were gifts to the grantees by petitioners.

Each deed of conveyance described each of the notes given therefor and recited that a vendor's lien was retained against the property conveyed to secure the payment of such notes. A valid lien was thereby created under Texas law against each such tract to secure the payment of the notes given therefor. The deeds were filed in the office of the county clerk of each county in which the deeded land is located.

None of the aforementioned vendor's lien notes was actually paid by the grantees; instead the notes were forgiven by petitioners at or about the time they became due. The first note given by N. Ray Kelley, which was due on or before January 1, 1955, was forgiven by petitioners in November 1954. The first

notes of Jerry E. Devenport and Sybil Devenport Angeley, which were due on or before January 1, 1955, were forgiven on or about December 23, 1954. All other notes were forgiven subsequent to the calendar year 1954, and those years are not before this Court.

The vendor's liens were released by petitioners on the dates set out below:

| Grantee | Date of release |
| --- | --- |
| N. Ray Kelley | Oct. 25, 1957 |
| M. E. Kelley | Oct. 25, 1957 |
| Beulah Danforth | Nov. 5, 1957 |
| Jerry E. Devenport | Feb. 5, 1957 |
| Sybil Devenport Angeley | Jan. 11, 1960 |

Gift tax returns for 1954 were filed for Margaret I. Kelley, individually, and for J. W. Kelley's estate. In each such gift tax return, there was deducted from the reported value of the donor's conveyance an amount equal to such donor's community portion of the vendor's lien notes.[2]

In his statutory notice of deficiency, respondent increased the taxable gifts of each petitioner for 1954 by such petitioner's community one-half of the above-described vendor's lien notes, being $48,000 for each petitioner. Petitioners here contend that, in August 1954, they sold remainder interests in their land to their children and grandchildren in consideration of the cash and vendor's lien notes, reserving an estate for both of their lives, and that they did not make gifts of such interests.

We hold for petitioners. The notes received by petitioners, secured by valid vendor's liens, constituted valuable consideration in return for the transfer of the property. Petitioners have reported as taxable gifts the value of the transferred interests in excess of the face amount of the notes. The notes were extinguished without payment as they became due, but the vendor's liens continued in effect as long as a balance was due on the notes. At any time prior to the forgiveness of the final note relating to a particular transfer, petitioners could have demanded payment of the amounts falling due and, in case of

---

[2] On the return of Margaret I. Kelley, the $30,000 specific exemption was properly claimed but was not allowed on the notice of deficiency. No specific exemption was claimed on the return filed on behalf of J. W. Kelley. Margaret I. Kelley reported taxable gifts in 1954 for herself of $2,862 and for J. W. Kelley of $32,862. Neither return claimed an annual exclusion for present interest gifts, nor did either return show as a 1954 gift the forgiveness of notes to N. Ray Kelley, Jerry E. Devenport, and Sybil Devenport Angeley which occurred in 1954.

default, could have foreclosed the vendor's lien on the property to satisfy the obligations.[3] In addition, the notes, to the extent of the unpaid balances, were subject to sale or assignment by petitioners at any time, and a purchaser or assignee could have enforced the liens.

This Court has held that when property is transferred in exchange for a valid, enforceable, and secured legal obligation, there is no gift for Federal tax purposes. In *Selsor R. Haygood,* 42 T.C. 936 (1964), a mother deeded properties to each of her two sons and in return took a vendor's lien note from each son for the full value of the property, payable $3,000 per year. In accordance with her intention when she transferred the properties, the mother canceled the $3,000 payments as they became due. Holding that the mother did not make gifts of the properties at the time of the transfer and receipt of the notes, the Court said (*Selsor R. Haygood, supra* at 946):

> If the notes of petitioner's sons were as a matter of law unenforceable, there might be validity to respondent's argument that there was no debt secured by the vendor's liens and deeds of trust which would be collectible. However, under the facts in this case where the very deeds conveying the properties recited that vendor's lien notes were being given in consideration therefor, the evidence certainly supports the fact that the notes did create enforceable indebtedness even though petitioner had no intention of collecting the debts but did intend to forgive each payment as it became due. * * *

See also *Geoffrey C. Davies,* 40 T.C. 525, 531 (1963); *Nelson Story III,* 38 T.C. 936, 941 (1962).

Respondent maintains that the vendor's lien notes received by petitioners lacked economic substance and were a mere "facade for the principal purpose of tax avoidance." However, there are two answers to this contention. First, the notes and vendor's liens, without evidence showing they were a "facade," are prima facie what they purport to be.[4] There is nothing in the trial record to support a finding that the notes and vendor's liens, both

---

[3] With respect to the deeds containing the vendor's liens, petitioners requested a finding that "A valid lien was thereby created under Texas law against each such tract to secure the payment of such notes given therefor." Respondent's reply brief stated that he had no objection to the request.

[4] The remarks of this Court in *Nelson Story III,* 38 T.C. 936, 941 (1962), are apposite: "The notes, on their faces, evidenced a binding obligation to pay a sum certain, and there is no evidence upon which to conclude that they were without consideration, invalid, unreal, or otherwise than what they purported to be. So far as we can determine they were valid * * * instruments, however collectible they might have been."

Cf. *George W. Van Vorst, Executor,* 22 B.T.A. 632, 634-635 (1931), affd. 59 F.2d 677 (C.A. 9, 1932); *Jerome J. Kaufman,* 55 T.C. 1046, 1054-1055 (1971).

in proper legal form and regular on their face, were not valid and enforceable. Nor is there any evidence of any agreement between petitioners and the donees qualifying the rights of petitioners under either the liens or the notes. There is no solid evidence indicating that petitioners did not purposely and consciously reserve all rights given to them under the liens and notes until they actually forgave the notes. Nothing in the record suggests the notes were not collectible. Indeed, since the gift tax returns, accepted as a basis for the computations in the notices of deficiency, reflect that the transferred remainder interests had substantial value in excess of the amounts of the notes, petitioners could have collected the notes through foreclosure. Thus, there is no real evidence to support respondent's argument that the notes and liens were a mere facade.

Second, since the notes and liens were enforceable, petitioners' gifts in 1954 were limited to the value of the transferred interests in excess of the face amount of the notes. Petitioners retained the rights over the remainder interests conferred by the vendor's liens and notes, including the rights of assignment and foreclosure in case of default. Any sale or other transfer of such interests by the donees would have been subject to the liens. Thus, a gift was not made of the remainder interests; only the excess of the value of the remainder interests over and above the agreed consideration for the sale was the subject of a gift.[5]

We are not unmindful of the elementary proposition of tax law that family transactions are subject to rigid scrutiny. See *Estate of Carr V. Van Anda,* 12 T.C. 1158, 1162 (1949). In the instant case, however, there is no substantial evidence to negate the legal effect of the secured obligations other than the suspicions which may arise from any transaction between family members. The subsequent forgiveness of the notes as they came due is not sufficient to support an inference that the notes and liens were without substance in 1954, when the initial transaction occurred. In the absence of additional evidence, we feel constrained to adhere to our prior holdings in similar cases.

Respondent argues, in addition, that if no gift occurred at the time of the transfer, the forgiveness of the note of N. Ray Kelley

---

[5] In *Geoffrey C. Davies,* 40 T.C. 525, 531 (1963), with reference to a transfer from a father to his son, this Court said:

"What removed it from the category of gifts, * * * was petitioner's valid, enforceable, and subsisting agreement to pay for the property and the effectuation of that agreement by the execution and recording of the purchase money mortgage."

in November 1954, and the notes of Jerry E. Devenport and Sybil Devenport Angeley in December 1954, constituted gifts of future rather than present interests.[6] It is respondent's position that when petitioners forgave part of the secured obligations, they were making gifts of fractional interests in the underlying remainder interests securing those obligations. We do not agree.

As each note was forgiven, petitioners made gifts of present interests equal to the face value of the forgiven note. Petitioners had conveyed the remainder interests to their children and grandchildren subject to the vendor's liens which were security interests. *Vaughan v. John Hancock Mut. Life Ins. Co.,* 61 S.W. 2d 189 (Tex. Civ. App. 1933). The notes, as discussed above, created enforceable indebtedness to petitioners from their children and grandchildren. Even though a part of that total indebtedness was discharged as each note was forgiven, the vendor's liens which covered the entire remainder interests, and which represented the sole connection between the indebtedness and the property, survived until the final note covering each property was discharged. Accordingly, in canceling the notes, petitioners did not make gifts of fractions of the remainder interests but made gifts in the form of the forgiveness of indebtedness.

There remains the issue of whether petitioners are liable for any additions to tax for failure to file a timely return. While we have held that the notes executed to petitioners were valid consideration, petitioners filed gift tax returns in 1972 which reported the excess in the value of the property over such consideration as taxable gifts. Each petitioner reported such excess as $32,862, and only Margaret I. Kelley claimed a $30,000 specific exemption. The additions to the tax, if applicable, would be based upon the entire tax on the taxable gifts for the year.

The notices of deficiency, which purport to notify petitioners of their liabilities, are very confused. The notices refer to income tax deficiencies rather than gift tax deficiencies, as do the

---

[6] Sec. 1003(b)(3), I.R.C. 1939, dealing with future interests, is as follows:

(3) GIFTS AFTER 1942.—In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1943 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.

The remainder interests as such were, of course, future interests. Sec. 25.2503-3(a), Gift Tax Regs.

computations of the additions to the tax.[7] Also, the notices of deficiency rely upon section 6651(a) of the Internal Revenue Code of 1954 as the basis for petitioners' liability for additions to tax. However, as provided in section 7851(a)(2)(B) of the 1954 Code, the transactions in dispute are taxable under the Internal Revenue Code of 1939. Under section 7851(a)(6)(D),[8] the penalty provisions of the Internal Revenue Code of 1939 continue in effect for taxes imposed by that Code. Taking the foregoing and all the other facts of record into account, we do not think any addition to tax is applicable.

To reflect the foregoing,

*Decisions will be entered under Rule 155.[9]*

---

[7] Although the computations of the tax refer to gift taxes, the "Computation of Addition to the Tax" contained in the notice of deficiency in each case is as follows:

*Failure to timely file tax return, sec. 6651(a)*

| | |
|---|---|
| Income tax liability required to be shown on return _____ | $11,506.02 |
| Income tax withheld _____ | 0 |
| Net _____ | 11,506.02 |
| Addition for failure to timely file tax return 25% of $11,506.02 ____ | 2,876.51 |

[8] Sec. 7851(a)(6)(D) states:

Except as otherwise provided in subparagraphs (B) and (C), the provisions of Chapter 28 and of subtitle D of the Internal Revenue Code of 1939 shall remain in effect with respect to taxes imposed by the Internal Revenue Code of 1939.

Subpars. (B) and (C) provide no relevant exceptions, and subtitle D, I.R.C. 1939, contains the penalty provisions for failure to file a gift tax return.

[9] The parties have stipulated that Margaret I. Kelley properly claimed a $30,000 specific exemption for 1954. No explanation appears as to why the Estate of J. W. Kelley does not qualify for a similar exemption, and the line entitled "Total Taxable Gifts for Preceding Years" in the notice of deficiency is completed by the insertion of "0." These matters should be considered in the Rule 155 computation.