CATHERINE L. WILSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilson
Docket No. 10948-90
United States Tax Court
T.C. Memo 1992-480; 1992 Tax Ct. Memo LEXIS 501; 64 T.C.M. (CCH) 583; August 24, 1992, Filed *501 Decision will be entered for petitioner. P was trustee of a trust in which she was the sole income beneficiary and possessed a general power of appointment. P, as trustee, transferred real estate owned by the trust to her three children and received in return an installment note which was due at the earlier of 120 days after demand for payment or 15 years after the date of the note. If P died prior to the due date, the note self-canceled. Every year an amount equal to 6 percent of the unpaid balance was added to the balance of the note. The note was secured by a deed of trust on the property. P and her children expected the note to be paid. The principal amount due on the note exceeded the fair market value of the real estate; however, the fair market value of the note was less than the fair market value of the real estate. Held: The transfer of the property by P was not a gift. The note executed by the children represents a valid indebtedness and provided consideration for the property transferred by P. The fact that the fair market value of the real estate exceeded the fair market value of the note does not automatically result in a taxable gift. For Petitioner: Yale F. *502 Goldberg, Michael W. Murphy, and David R. Frazer. For Respondent: Mary P. Kimmel. RUWE
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined a deficiency of $ 4,189,821 in petitioner's Federal gift taxes. The sole issue for decision is whether the transfer of certain real estate by petitioner to her children in exchange for their promissory note constitutes a taxable gift for purposes of section 2512. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing her petition in this case, petitioner was a resident of Phoenix, Arizona. Petitioner is the trustee of a trust which she and her now deceased husband created prior to his death. Petitioner is *503 also the sole income beneficiary of the trust. As trustee, petitioner has complete power to distribute trust principal and income. [2] The only assets transferred to the trust were two tracts of land collectively referred to as the I-10 property.
After the death of petitioner's husband, petitioner's three children took over the management of the I-10 property. Within 9 months of Mr. Wilson's death, petitioner and her children decided that the children should try to sell the I-10 property. On December 30, 1986, petitioner, acting as trustee, transferred the I-10 property to her children or their family trusts in exchange for a promissory note from the transferees. The face value of the note was $ 12,004,264. The note requires payment within 120 days of demand. In the absence of demand, the note was due 15 years after execution. The note provides that no interest will be charged, but, to the extent *504 the principal has not been repaid on each anniversary date of the note, an amount equal to 6 percent of the unpaid balance was to be added to the unpaid balance. [3] In the event petitioner died before the note was paid, the note would cancel, and the children's obligation thereunder would terminate. At the time of transfer, Mrs. Wilson was 68 years of age. The note was secured by a deed of trust which listed the children or their family trusts as both trustor and trustee, and it listed petitioner, in her capacity as trustee, as beneficiary. The pertinent terms of the note are set out in the attached appendix. An appraisal done on January 12, 1987, for purposes of preparing Mr. Wilson's Federal estate tax return, valued the I-10 property at $ 10,400,000 as of his death on April 28, 1986. Respondent's notice of deficiency in this case is based on her determination that the fair market value of the *505 I-10 property was $ 10,400,000 on December 30, 1986. However, the parties now stipulate that the fair market value of the I-10 property on December 30, 1986, was $ 4,040,000. At the time of the transfer, the children lacked the personal resources to pay the principal amount owing on the note. However, the children believed that the I-10 property was very marketable and that they would be able to sell it in a short period of time and pay off the note. The children listed the I-10 property for sale as soon as it was transferred to them. One year after listing the property, they had not received a single offer to purchase. At the time of trial in this case, the children had still not received a single offer to purchase the property. On March 1, 1990, respondent issued a notice of deficiency to petitioner for Federal gift taxes. The notice of deficiency is based on respondent's determination that petitioner transferred her one-half community property interest and her life-income interest in the I-10 property to her children for no consideration in money or money's worth. [4]
*506 OPINION The sole issue for decision is whether the transfer of the I-10 property to petitioner's children, or their family trusts, constitutes a taxable gift. Section 2501(a)(1) imposes a tax on the transfer of property by gift. Under section 2512(a), the amount of the gift is equal to the value of the property on the date of the transfer. The value of the property is equal to the price at which the property would change hands between a willing buyer and willing seller, neither being under any compulsion to buy or sell, and both having reasonable knowledge of the relevant facts. Sec. 25.2512-1, Gift Tax Regs. Under section 2512(b), property transferred for less than adequate and full consideration is deemed to be a gift to the extent the property transferred exceeds the value of the consideration received. Respondent argues that the fair market value of the I-10 property was $ 4,040,000, the fair market value of the note which petitioner received from her children was zero, and that this results in a taxable gift of $ 4,040,000. We disagree. This Court has held that when property is transferred in exchange for a valid, enforceable, and secured legal obligation to pay full *507 value, there is no gift for Federal tax purposes. Estate of Kelley v. Commissioner, 63 T.C. 321, 323-324 (1974); Haygood v. Commissioner, 42 T.C. 936, 946 (1964); see Laughinghouse v. Commissioner, 80 T.C. 425, 431 n.8 (1983). This is true even if the parties are related and seller/obligee indicates an intent to forgive the indebtedness in the future. Davies v. Commissioner, 40 T.C. 525, 530 (1963); Story v. Commissioner, 38 T.C. 936, 941 (1962). The clear rationale in the aforementioned cases was that the putative donor retained an interest in the transferred property by virtue of the security interest, and the putative donee concurrently undertook the legally enforceable obligation to pay the face value of the note. So long as the face amount of the note equals or exceeds the value of the property being purchased, the economic reality in this case is that, in the aggregate, the children received nothing of value. Petitioner's children agreed to pay $ 12,004,264 for the property and signed a note in that amount. The note was secured with a deed of trust for the I-10 property. The uncontradicted testimony in this case establishes that petitioner and her *508 children intended that the children would sell the property and pay the note with the proceeds. Petitioner would release the deed of trust upon satisfaction of the obligation. In short, the children provided full consideration for their interest in the I-10 property. Estate of Kelley v. Commissioner, supra; Haygood v. Commissioner, supra; see Laughinghouse v. Commissioner, supra.
Respondent's position is that no consideration was provided for the transfer of the I-10 property. This is based on respondent's conclusion that the fair market value of the note received by petitioner should be compared to the fair market value of the I-10 property in order to determine whether petitioner transferred property for insufficient consideration for purposes of Federal gift taxation.[5] Those entering into a transaction financed with a bona fide instrument of indebtedness assume the instrument will be repaid. Indeed, the instrument represents a legally enforceable right to payment of the face amount, and the recipient of the note is considered to have received money or money's worth equal to that amount. See Story v. Commissioner, 38 T.C. 936, 941-942 (1962). *509 If we were to adopt respondent's rationale, many seller-financed transactions and loans would have a gift element since the discounted value of a note will often be less than the value of the property transferred.[6]This is especially true when the transactions or loans are intrafamily.[7]Respondent's position ignores the economic reality of transactions financed with bona fide instruments of indebtedness.[8]
*510 Petitioner, in effect, made an owner-financed sale of the property to her children, and pursuant to the deed of trust, retained the right to reacquire the property in the event the children failed to pay the purchase price under the terms of the note. The face amount of the note was more than three times the value of the property.[9] Under these circumstances, the transfer of the I-10 property was not a taxable gift. The transaction vested legal title to the I-10 property in the children; however, the fair market value of that title has to be determined in light of the encumbrances on the property. A buyer would pay nothing for a deed to property that was encumbered by a fully secured note whose unpaid balance exceeded the value of the property by threefold. There simply was no gift. See Estate of Kelley v. Commissioner, 63 T.C. at 325. *511 Respondent argues that the fact that buyer and seller did not obtain independent counsel to negotiate this transaction and the fact that the face amount of the note exceeds the value, which the parties now stipulate the property was worth on the date of transfer, indicate that this transaction was not bona fide. These arguments are unpersuasive. The first erroneously assumes that independent counsel is required for a transaction to be bona fide. The second suggests that petitioner and her children could not have reasonably believed, at the time of transfer, that the property was worth significantly more than the value which the parties now stipulate. On the basis of a professional appraisal, the estate tax return for Ivy Wilson reported the I-10 property value at $ 10,400,000 as of April 28, 1986. The transaction in issue took place 8 months later. On March 1, 1990, respondent determined that the property was worth $ 10,400,000 as of December 30, 1986, the date of the transfer. While both parties were mistaken, we find nothing in the record to suggest an intentional overvaluation. We reject respondent's arguments and find that the note represents a bona fide indebtedness. *512 [10]
*513 Decision will be entered for petitioner. APPENDIX DEMAND PROMISSORY NOTE
$ 12,004,264 Phoenix, Arizona
December 30, 1986 For valuable consideration, receipt of which is hereby acknowledged, Jewel E. Wilson, Stewart A. Wilson, as Trustee of the Stewart Allen Wilson Family Trust, and Irvin Ivy Wilson, III, as Trustee of the Irvin Ivy Wilson, III Family Trust, (the "Debtors") jointly and severally promise to pay to the order of Catherine Louise Wilson, as Trustee of the Irvin I. Wilson, Jr. Trust, within 120 days after demand by Seller, or if not sooner paid, on the date which is fifteen years from the date of this Note, (i) the principal sum of Twelve Million Four Thousand Two Hundred and Sixty Four Dollars ($ 12,004,264), without interest, and (ii) to the extent that such principal amount has not been paid on each successive anniversary date of this Note, an additional amount as of each such anniversary date equal to 6% of the then unpaid balance (or if more, such larger amount which is the smallest amount which will avoid application of the original issue discount and related installment sale rules under Sections 483 and 1272 through 1278 of the Internal Revenue Code). *514 If Catherine Louise Wilson dies prior to full payment of this Note, however, this Note will then be cancelled and the Debtor's obligation to pay the outstanding balance then due hereunder will terminate. Debtor may at any time or from time to time pay this Note, in whole or in part without penalty. Debtor waives diligence, demand, presentment, notice of nonpayment and protest. Debtor shall pay reasonable costs and attorney's fees if the holder hereof sues on this Note after default by Debtor. This Note is secured by a Deed of Trust of even date herewith in favor of Seller on Seller's real property located in Maricopa County, Arizona. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year 1986, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The terms of the trust are discussed more fully in Estate of Wilson v. Commissioner, T.C. Memo. 1992-479↩.
3. The figure of 6 percent was used in an effort to avoid the original issue discount provisions of secs. 1271-1275.↩
4. Respondent's determination also increased taxable gifts to reflect three debts of $ 6,500 each, which petitioner admits she forgave in 1986. Petitioner's three children were the obligors liable for these debts. Petitioner contests the forgiveness of indebtedness aspect of respondent's determination on the grounds that the three debts that she forgave qualify for the annual exclusion under sec. 2503. If we find that the transfer of the I-10 property was not a taxable gift, then the debts that petitioner forgave qualify for the annual exclusion and are not subject to the gift tax.↩
5. On brief, respondent states: Under I.R.C. sec. 2512(b)↩, Catherine [Mrs. Wilson] made a gift equal to the amount by which her transfer exceeded the value of the consideration * * *. The amount of the gift is the amount by which the fair market value of her * * * [interest in the I-10 property] exceeds the fair market value of the demand promissory note * * *. 6. Indeed, petitioner's expert valued the note in this case by discounting the value of the security for the note by 50 percent. The figure arrived at by petitioner's expert was significantly less than the value of the I-10 property. Respondent argues that, to the extent that petitioner's expert concluded that the discounted value of the note was less than the value of the I-10 property, petitioner has conceded the presence of a gift. Petitioner has made no such concession. Petitioner's expert was quite clear that the value he reached represented the price petitioner could expect to receive if she sold the note. This price represents a myriad of factors such as time value of money, risks associated with potential nonpayment, the value of the collateral, various transaction costs, prevailing interest rates, supply and demand, and the need for the purchaser to profit on the investment. Petitioner's expert concluded that the notes had value because the notes were secured by valuable real estate and that an investor could make demand under the terms of the note, and if payment was not forthcoming in 120 days, proceed with a trustee's sale. Respondent does not dispute that a purchaser of the note could make demand, and if payment is not timely made, proceed with a trustee's sale. Petitioner's expert concluded that an investor could insure against the premature death of Mrs. Wilson by either purchasing insurance on her life or self-insuring. This scenario seems plausible and indicates that the notes have value. ↩
7. We are aware of the basic tax principle which states that intrafamily transactions are subject to strict scrutiny. In the instant case, however, there is no substantial evidence to negate the legal effect of the note other than the suspicions that may arise from transactions between family members. This alone is insufficient reason for finding a gift. Estate of Kelley v. Commissioner, 63 T.C. 321, 325↩ (1974). 8. The impropriety of respondent's position is apparent when compared to Estate of Frane v. Commissioner, 98 T.C.     (1992). Estate of Frane↩ involved a self-canceling installment note which was executed by decedent's children in payment for stock purchased from decedent. We held that, pursuant to sec. 453B, the cancellation of the note at decedent's death was to be treated as a taxable disposition of the installment obligation at its fair market value and that where the obligor and obligee are related persons, the fair market value of the note shall be no less than its face value.
9. The note on its face evidences a binding obligation to pay a sum certain, and there is no evidence that it was without consideration, invalid, unreal, or other than what it purports to be. See Story v. Commissioner, 38 T.C. 936, 941↩ (1962).
10. Respondent also argues that the note was not bona fide, because the children could never have expected to be able to pay it. In arguing this position in her brief, respondent erroneously asserts that the current outstanding balance due on the note was $ 46,064,413.13. We cannot ascertain the basis for this assertion; however, it does not appear to be the result of a typographical error since, on brief, respondent repeatedly relies on this factual assertion to support her argument that the note is not bona fide. Nevertheless, as of the date of trial, the outstanding balance on the note was only $ 15,155,106.72. Respondent also asserts that the note is not bona fide because no interest was charged. $ 15,155,106.72 equals the amount that would have been owed if the note accrued simple interest at an annual rate of 6 percent. Petitioner's attorney testified that the provision in the note requiring that an amount equal to 6 percent of the unpaid balance be added to the balance each year was included so as to avoid the original issue discount provisions of the Code.↩